BEATTY *et al.* v. WALKER *et al.*

[*Opinion Filed Jan 27, 1893.*]

1. SCHOOL BOARD—*Election of Members*—The election of members of the school board in cities of the first class will be governed by the provisions of St. c. 79, relating specifically to school matters, and not by chapter 15, relating to the election of city officers generally; the insertion of the words, "members of the school board," in article 1, § 8, of the latter chapter, (the clause providing for the election of

all city officers,) being ascribed to inadvertence on the part of the legislature.

2. ELECTION OF SCHOOL BOARD—*Invalid*—An election of members of the school board in a city of the first class held in pursuance of chapter 15, providing for the election of city officers generally, is invalid, as the election of a school board must be held in pursuance of chapter 79, providing for such election.

3. GENERAL ELECTION—*Conflict*—St. c. 79, providing for the election of members of the school board in cities of the first class, is not in conflict with chapter 33, providing for elections generally.

*Appeal from the District Court of Oklahoma County, Hon. J. G. Clark, Judge.*

Submission without action of a controversy between John H. Beatty and others and Delos Walker and others as to whether plaintiffs or defendants are the legally qualified school board of Oklahoma City. From a judgment dismissing the proceedings, entered upon a finding for defendants, plaintiffs appeal. Affirmed.

*Reddick & Wilkerson*, for Appellants.

*A. B. Hammer*, for Appellees.

The opinion of the court was delivered by

BURFORD, J.: This case was submitted to the court below upon an agreed statement of facts, which is as follows:

John H. Beatty, W. H. Richardson, G. W. Jackson, J. A. Ryan, N. Z. Hurd and H. J. Smith, and Delos Walker, D. D. Leach, A. S. Sherwood, A. V. Francis and J. M. Housel respectfully present to the court a submission of the following controversy between them without bringing an action, and agreed upon the following, to-wit:

The plaintiffs claim to be the duly elected, qualified and acting members of and constitute the school board of Oklahoma City.

The defendants claim that they are the duly elected,

qualified and acting members of and constitute said school board of Oklahoma City.

It is agreed:

"*First:* That Delos Walker was elected president of said school board on the first Tuesday of April, 1891, at a school meeting held in the city of Oklahoma City.

"*Second:* That D. D. Leach, A. S. Sherwood, A. V. Francis and J. M. Housel were each and all elected members of said board from their respective wards on the first Tuesday in April, 1892, at a school meeting held in said city of Oklahoma City.

"*Third:* That each and all of the defendants took the oath of office and qualified, as required by Chap. seventy-nine (79) of the statutes of Oklahoma.

"*Fourth:* That the city of Oklahoma City is a municipal corporation, and ever since the 25th day of December, 1890, has been a city of the first class, having two thousand five hundred (2500) inhabitants.

"*Fifth:* That the first annual election in said city was held on the first Tuesday in April, 1892.

"*Sixth:* That it was proclaimed that at said election, in addition to other officers, there should be elected one member of the school board from each ward, who should hold their offices for one year, and one member of the school board from each ward who should hold their offices for two years.

"*Seventh:* That in pursuance of said proclamation, the qualified voters of said wards and said city met in their respective wards and elected the plaintiffs and one Williams and one Wyatt members of said board of education from their respective wards.

"*Eighth:* That certificates were issued, in pursuance of chapter fifteen of the Oklahoma statutes, to the plaintiffs, and said Williams and Wyatt, certifying that they had been respectively elected members of said board, and thereupon and prior to the first Tuesday in May, 1892, the plaintiffs and each of them appeared before the county clerk of Oklahoma county and took and subscribed the oath of office, to perform their duties faithfully, and ever since have been claiming to act as members of, and to legally constitute said board.

"*Ninth:* That it is intended by the words 'school

meeting,' in speaking of the election of the defendants, to mean mass meeting of all those entitled to vote in the city of Oklahoma City, in contradistinction of a regular election in said wards and city at regular polling places in each ward, such as herein referred to in describing the election of the plaintiffs; and all the parties to this submission are and were qualified to act as members of said school board from the respective wards of said city, were residents and electors of the respective wards, from which they were respectively elected.

"*Tenth:* Chapter 79 of the Oklahoma statutes was, at the time of its passing, known as Council Bill No. 2, and was passed by the legislature and became a law prior to the passage of chapter 15 of the Oklahoma statutes, which was known at the time of its passing as Council Bill No. 76.

"*Eleventh:* That the defendants, ever since their election, have been acting as the regularly elected school board, said Walker as president and said Leach as secretary.' Having full control of all school matters and the books and papers belonging to said board, and, notwithstanding a demand has been made on them as said board to turn over their respective offices to the plaintiffs, and upon Delos Walker to turn over the papers, etc., etc., of his office as president to John Beatty, and upon the said Leach to turn over the papers, etc., etc., of his office as secretary to W. H. Richardson, they, and each of them, have refused so to do, and are now in possession of everything pertaining to said board and said offices

"*Twelfth:* That the plaintiffs, prior to the first Tuesday of May, duly met and organized by electing John H. Beatty president and W. H. Richardson secretary of said school board.

"The court is at liberty to draw inferences of fact and none of the admissions herein are to affect either party or be used except for the purpose of this submission.

"The questions desired to be submitted herein are as follows:

"*First:* Is chapter 79 or chapter 15, or both, to govern elections of the school boards in cities of the first class?

"*Second:* Are the plaintiffs or the defendants duly elected and qualified members of the school board of Oklahoma City ?

"*Third:* Are the plaintiffs or the defendants entitled to act as such board ?

"*Fourth:* Is Delos Walker president of the board or J. H. Beatty ?

"It is agreed between the parties hereto that the judgment of the court upon the case here submitted may be the same in form, practice and proceed with like effect as if this was a proceeding in the nature of information or 'quo warranto' wherein the plaintiffs were relators and the defendants were respondants, and that if judgment of the court should be for the plaintiffs a writ of ouster shall issue thereon against the defendants and each of them, and if the judgment of the court shall be for the defendants it shall also be for the dismissal of this proceeding.

| | |
|---|---|
| DELOS WALKER, | J. H. BEATTY, |
| J. M. HOUSEL, | N. Z. HURD, |
| D. D. LEACH, | G. W. JACKSON, |
| A. V. FRENCH, | H. F. SMITH, |
| A. S. SHERWOOD, | W. H. RICHARDSON." |

Upon the above stipulation the district court found for the defendants, and judgment was entered dismissing said proceedings.

From the judgment the plaintiffs appeal to this court, and we are called upon to determine which of the school boards claiming the right to govern the schools of Oklahoma City are in law entitled to have that privilege.

The plaintiffs claimed their right by virtue of an election held pursuant to the provisions of Chap. 15 of the Oklahoma Statutes.

That they are not entitled to the offices, then it becomes immaterial so far as their rights are concerned, whether the defendants are elected in manner and form as prescribed or not, for it is admitted that the defendants are in possession and control of the several offices, and are performing the duties imposed by law, upon

such school boards, and are conducting the schools and school affairs of said city; hence, they are *de facto* officers, and their acts are binding upon the public and they are entitled to continue in such custody and control until some persons having a better right, secure their removal in a proper manner.

The legislature which passed the laws in question were limited in time and were overburdened with work, and when we contemplate the vast amount of work accomplished bv them, it is not surprising that many conflicts and inharmonious provisions crept in, and knowing the general history of said legislation it is not always proper that we should apply the ordinary rules of construction and interpretation to their acts. It is evident that in many instances they did that which was never intended, by oversight, and the lack of time to fully consider and compare all the several enactments. Then, again, the adoption of laws from other states without first harmonizing the same with provisions of laws already enacted, has led to great confusion, litigation and expense.

About the only safe rule that we can rely upon in the interpretation of these laws is, that legislative intent and purposes must govern; but we are left in many instances largely to speculation and conjecture as to what was in the legislative mind, or what the legislative purpose was.

Chapter 15 of the Statutes of Oklahoma is entitled an act providing for the incorporation and government of cities of the first class.

This act provides for the manner of incorporating cities of first class, creates the several city offices, provides for the election of officers to fill such offices and defines their several duties; it defines and prescribes the corporate powers, and the manner of raising revenues and expending the same, and is complete in

every particular in so far as it relates to the powers, duties, franchise and privileges of municipal corporations of this class. The chapter contains five subdivisions and one hundred and two sections, and no where in the entire chapter is the subject of schools or school officers mentioned, except in § 8 of article 1, which provides for the election of mayor, city clerk, police judge, city treasurer, attorney, city assessor, treasurer of the school board, two councilmen and two members of the school board of each ward. The powers and duties of all the municipal officers are defined, but the school officers here mentioned are not referred to in any other section of the entire act. Under this act all revenues collected are required to be paid to the city treasurer and paid out only on the order of the common council. No authority is given the municipal officers to levy school taxes, to build school houses or furnish school supplies. They are empowered to condemn real estate for city buildings, hospital, cemetery, etc., to contract debt for such buildings and purposes, but they have no control over the schools, school buildings or school revenues.

It is very clear that the legislature never intended that this act should provide a school system for cities of the first class.

This, it is claimed, is an adopted act, and the school officers mentioned in § 8 are evidently the result of oversight, and the fact that such mention is made is not to be interpreted as evidence of any intent on the part of the legislature to change, modify or repeal any portion of the school system.

Chapter 79 is entitled "An Act Establishing a System of Public Schools in the Territory of Oklahoma and Providing for the Maintenance Thereof."

This act is intended to furnish a complete system of public schools for the Territory. It provides for high

schools, city schools, graded schools and normal institutes.

It provides for a Territorial superintendent of public instruction, a Territorial board of education, county superintendents, city superintendents, township and city school boards.

It defines the duties and prescribes the powers of these several officers.   It provides for their election or appointment and defines their qualifications.   It provides the mode and procedure of raising revenue for the maintenance of schools, purchase of school property and supplies.   It provides who may teach in the public schools and the manner of determining the qualifications of teachers,   It provides who may vote for school officers and confers the right to vote at school elections on females who have the qualifications of electors.

Section 1, Art. 8 of this act provides for a special election to be held within thirty days after the approval of the act, at which election the qualified voters of each township shall elect by ballot from the township at large one person as president of the school board; also at the same voting precinct in each township on the same day and in the same manner, the qualified voters of each district are required to elect one member of the school board for each district.   Also in the same manner, on the same day and for the same length of time a president shall be elected in every *city*, and one member of the school board for each ward,   The members in the odd numbered wards to serve to the end of school year, and those in even numbered wards to serve two years.

Section 2 provides for a regular general school election on the first Tuesday of April, 1891, and annually thereafter, to fill vacancies in the school boards that shall occur by reason of expiration of term of office. The president to serve three years and the members

elected from districts and wards to serve two years respectively.

Section 3 provides for filling vacancies by appointment by the county school superintendent.

Section 4 provides for the organization of the boards by electing one of their members secretary and taking the prescribed oath of office.

Section 6 makes each township and city board a body corporate, with the right to sue and be sued; make contracts; buy and sell real and personal estate as the interests of the school or city may require.

The act further defines the powers and duties of the several officers and members of the boards and the act standing alone without the aid of any other statutes, (except the statute defining who are electors generally,) provides all the machinery for operating a complete system of free schools in the territory and was evidently intended by the legislature to control and govern in all matters pertaining to the public schools.

It is contended that this act is in conflict with Chap. 33, Oklahoma Statutes, which is "An Act Concerning Elections and Providing Penalties for the Violation of the Provisions Thereof."

This act is an adopted act from the Statutes of Indiana and is what is generally termed the Australian Election System.

It is intended to govern all elections held in the territory other than school elections which are specially provided for. They are independent acts and both can stand and be operative in its proper sphere.

It would be impracticable to attempt to apply this system to the school elections. The regular election for cities of the first class is by law fixed on the same day as the school elections. Under the school law females are allowed to vote for school officers. Under the general election law they are not permitted to vote.

The judges are not allowed to examine the ballots.

Females if permitted to vote for school officers at the same election might vote the entire ticket, as all city candidates are required to be printed upon the same ticket.   There would be no means of preserving the purity of the ballot or of determining what tickets were voted by legal and what by illegal voters; doubt and confusion would follow and the entire election be vitiated.

The two propositions are utterly inconsistent and impracticable.

The presumption is that the legislature acted intelligently and with these incompatible provisions in view, and that one was never intended to take the place of, or aid the other.

The school system may be imperfect; it may be incomplete but that is a question for the legislative branch of the government and not of the courts.   It is the duty of the courts to so construe and interpret the laws, if possible, as to give them force and effect and make them operative.

Whether the defendants were elected in the manner as prescribed by the school laws we need not decide; the plaintiffs are not the school board of Oklahoma City nor is John H. Beatty the president of said board, and they have no right, title or claim to the offices they seek to secure, nor are they entitled to the custody of the school property.

The judgment of the district court is affirmed at the costs of the appellants.

All the Justices concurring.